IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

Jerome L. Mitchell, #279346,   )
                                        )      Civil Action No. 6:09-1010-RBH-KFM
                  Plaintiff,    )
                                          )      **REPORT OF MAGISTRATE JUDGE**
          vs.              )
                                          )
SCDC, S.C. Dept. Of Corrections;   )
Warden George Hagan;               )
Mary Coleman; Libby Priester;      )
Sgt. Walden; Officer Donald Keisler,  )
                                          )
                    Defendants.   )
_____)

        This matter is before the court on the defendants' motion for summary judgment and plaintiff's motion for default judgment. The plaintiff, a former state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

        On May 14, 2010, the defendants filed a motion for summary judgment. By order filed May 17, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a motion for default judgment on May 24, 2010, and his response in opposition to the defendants' motion on June 15, 2010.

## FACTS PRESENTED

On April 16, 2008, the plaintiff was an inmate in the custody of the South Carolina Department of Corrections ("SCDC") at the Allendale Correctional Institution[1] housed in the Special Management Unit "(SMU)". After the plaintiff finished his shower, corrections officers attempted to return the plaintiff to his cell. The plaintiff deviated from the direct route and walked toward the water fountain (compl. at 3). In response, defendant Corrections Officer Donald Keisler gave the plaintiff two directives to return to his cell. The plaintiff turned away from the water fountain and moved very quickly toward defendant Keisler, with his head lowered as if to inflict a head butt. Corrections Officer Keisler immediately pulled out his Top Cop pepper spray and applied a burst to the plaintiff. Officer Keisler regained control over Inmate Mitchell, afforded him running water to wash off the spray and returned him to his cell (John R. Pate aff. ¶¶ 20-21, attach. 1, 2)). The plaintiff signed up for sick call and saw medical personnel (compl. at 4). The plaintiff was charged with threatening to inflict harm on a correctional officer, but because Officer Keisler was no longer employed by the SCDC at the time of the disciplinary hearing, the charge was dismissed (Pate aff. ¶ 22).

On the following day, the plaintiff filed a grievance on the incident. When defendant Warden George Hagan denied the grievance on October 8, 2007, the plaintiff appealed to the SCDC Grievance Branch. The SCDC Grievance Branch, under the direction of Mary Coleman, reviewed and ultimately denied the plaintiff's grievance. The plaintiff did not pursue the final review available to him under SCDC Grievance Policy.

On July 3, 2008, during cell cleaning, Sergeant Walling (incorrectly named as Sgt. Walden in the complaint) attempted to deal with the plaintiff's cellmate and ultimately used pepper spray on the cellmate. The plaintiff woke up and, although he was not sprayed,

---

[1]Since the filing of his complaint, the plaintiff has been released from prison (*see* doc. 35).

claims that he experienced the effect of the gas. He claims that he suffered the "burning affect of the gas for several days" until his clothes and bed linen were washed (compl. at 5).

On July 3, 2008, the plaintiff grieved the incident from earlier in the day. He also sent a Request to Staff to Warden Hagan. Defendant Institution Grievance Coordinator Libby Priester reviewed and returned his July 3, 2008, grievance unprocessed because the plaintiff requested transfer to another institution, a non-grievable issue, and because he requested monetary damages. The plaintiff did not take any further action with regard to this grievance. On July 30, 2008, the plaintiff filed a grievance based upon the events of July 3, 2008, this time focusing on Warden Hagan. This grievance was returned unprocessed because the inmate requested monetary damages. The plaintiff did not resubmit the grievance and took no further action.

On April 17, 2009, the plaintiff filed the instant lawsuit alleging violations of his civil rights as guaranteed by the Eighth and Fourteenth Amendments to the United States Constitution. He named as defendants the South Carolina Department of Corrections ("SCDC"), and Warden George Hagan, SCDC Inmate Grievance Branch Chief Mary Coleman, ACI Inmate Grievance Coordinator Libby Priester, Sergeant Walling and Correction Officer Donald Keisler, all in their official capacities.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

3

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

4

***Excessive Force***

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298-304 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the United States Supreme Court held that whether the prison disturbance is a riot or a lesser disruption, corrections officers are required to balance the need to restore discipline through the use of force against the risk of injury to inmates. The Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is…whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7. In *Wilkins v. Gaddy*, 130 S.Ct. 1175 (2010), the United States Supreme Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. *Id.* at 1177-78 (citing *Hudson*, 503 U.S. at 4). However, the Court noted that the absence of serious injury may be one factor to consider in the Eighth Amendment inquiry as it may suggest "'whether the use of force could plausibly have been thought necessary in a particular situation'" and may indicate the amount of force applied. *Id.* at 1178 (quoting *Hudson*, 503 U.S. at 7).

The plaintiff alleges that Officer Keisler used excessive force when the officer sprayed him with pepper spray. The plaintiff admits that he strayed from a route directly back to his cell, that the corrections officer gave him corrective instruction, and that when he failed to respond the officer prepared to use his gas to restore compliance. Officer Keisler's incident report describes a recalcitrant inmate, angry at being told to return to his

cell rather than go to the water fountain. According to Officer Keisler, the plaintiff ran toward him with his head down as if to "head butt' him (Pate aff., attach. 2). Along with his complaint, the plaintiff submitted inmate grievance forms from two other inmates, Steven Parker and Darrel Hunter, in which the inmates described the April 16[th] incident (compl., attach. 2). Parker and Hunter, in their unsworn grievances, state that the plaintiff and Officer Keisler had a "verbal altercation" and the plaintiff was using profanity and "talking trash," but the plaintiff was "fully in control" and in handcuffs when Officer Keisler sprayed him.

As argued by the defendants, the evidence before the court shows the officer's use of his spray, both in self defense and to restore order, hardly represents an assault carried out maliciously and sadistically. Rather, Officer Keisler's response represents the good-faith effort to maintain and restore discipline accepted by our jurisprudence as appropriate. Furthermore, immediately following the administration of gas, corrections officers gave the plaintiff access to water and allowed him to rinse off the effects of the spray. He then returned to his cell without further incident. The plaintiff admits that he complained of injury, asked to see a doctor, and did receive medical attention. Based upon the foregoing, the plaintiff has failed to show that Officer Keisler used excessive force against him in violation of his constitutional rights.

The plaintiff next alleges that on July 3, 2008, during cell cleaning, Sergeant Walling (incorrectly named as Sgt. Walden in the complaint) attempted to deal with the plaintiff's cellmate and ultimately used pepper spray on the cellmate. The plaintiff claims that, although he was not sprayed, he experienced the effect of the gas. The plaintiff acknowledges that the officer took no action against him personally but instead was spraying his cellmate (compl. at 4). Again, the plaintiff has failed to show that Sergeant Walling acted maliciously and sadistically rather than as part of a good faith effort to maintain and restore discipline. Based upon the foregoing, this excessive force claim also fails.

6

***Medical Indifference***

The plaintiff also complains that he had to live several days (until his clothes and sleeping linen were cleaned) with the "burning effect" of the gas sprayed toward his cellmate (compl. at 5). To the extent these allegations are an attempt by the plaintiff to state a claim for deliberate indifference to serious medical needs, they fail to demonstrate a deprivation of any constitutional rights. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or

malpractice does not violate the Eighth Amendment. *Id.* "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Burton*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

As argued by the defendants, the plaintiff alleges no more than discomfort and, while his allegations may amount at most to negligence, they are not the kind of intentional conduct proscribed by the Eighth Amendment. Based upon the foregoing, this claim also fails.


***Grievances***

The plaintiff alleges claims against Warden George Hagan, Mary Coleman (Chief of the Inmate Grievance Branch), and Libby Priester (ACI Grievance Coordinator) related to the processing and handling of his complaints and institutional grievances. The plaintiff's allegations do not give rise to any constitutional deprivation. First, "there is no constitutional right to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Second, the plaintiff's allegations that the defendants have not followed their own policies or procedures, standing alone, does not amount to a constitutional violation. *See Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C. 1992) (violations of prison policies that fail to reach the level of a constitutional violation are not actionable under § 1983). Accordingly, the claim fails.

Based upon the foregoing, the defendants' motion for summary judgment (doc. 40) should be granted.[2]

### *Plaintiff's Motion for Default Judgment*

In his motion for default judgment, the plaintiff first argues that the defendants did not timely answer his complaint. Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), the defendants had 21 days after being served with the summons and complaint within which to file their answers. Defendants Coleman, Hagan, and Priester were served on June 10, 2009, and defendant SCDC was served on August 13, 2009.[3] The defendants' answer was filed on June 30, 2009, and thus was timely filed. The plaintiff further complains that this court granted the defendants' request for an extension of time within which to file their dispositive motion. Such extensions are within this court's discretion. Based upon the foregoing, the plaintiff's motion for default judgment (doc. 43) should be denied.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 40) be granted and the plaintiff's motion for default judgment (doc. 43) be denied.

s/Kevin F. McDonald
United States Magistrate Judge

November 16, 2010

Greenville, South Carolina

---

[2]The defendants also argue that the plaintiff failed to exhaust his administrative remedies and that they are entitled to qualified immunity and Eleventh Amendment immunity. Since this court finds the claims fail on the merits, these arguments will not be addressed.

[3]The court docket does not show that service documents for defendants Keisler and Walling have been returned executed (*see* doc. nos. 9, 13, 16, 30).